2025 IL App (1st) 241639

FIFTH DIVISION
December 19, 2025

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

No. 1-24-1639

| | | |
|---|---|---|
| DEADRICK CARR, as Independent Administrator | ) | |
| of the Estate of Keshawn Horton, Deceased, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2019 L 002186 |
| | ) | |
| THE CITY OF CHICAGO, a Municipal Corporation, | ) | Honorable |
| | ) | Bridget A. Mitchell, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE MIKVA delivered the judgment of the court.
Justices Oden Johnson and Tailor concurred in the judgment.

**OPINION**

¶ 1     Plaintiff Deadrick Carr, on behalf of the estate of her grandson, Keshawn Horton, appeals from a jury verdict in favor of the City of Chicago. Ms. Carr argues that erroneous evidentiary rulings and an improper jury instruction denied her a fair trial. The City has moved to dismiss Ms. Carr's appeal for lack of appellate jurisdiction. For the reasons that follow, we agree that this court lacks jurisdiction and dismiss the appeal.

¶ 2                              I. BACKGROUND

¶ 3     This wrongful death action was brought against the City and several of its police officers by Fonzell Horton, as the independent administrator of the estate of his son, Keshawn Horton, on February 27, 2019. Keshawn's grandmother, Ms. Carr, later became the administrator of his estate, and the claims against the individual officers were voluntarily dismissed before trial.

¶ 4    Ms. Carr alleged that on the night of July 17, 2016, 13-year-old Keshawn was a passenger in a van that was involved in a traffic stop. The driver of the van sped off, the police followed, and a high-speed chase ensued over wet and slippery roads. The driver lost control, colliding with a fire hydrant and two parked cars, and Keshawn was ejected from the van. He was found pinned beneath another vehicle and was taken to a nearby hospital, where he died of his injuries several days later, on July 22, 2016. Ms. Carr alleged that the officers involved in the chase "exhibited a conscious disregard for the safety of others, and thereby engaged in willful and wanton conduct" that proximately caused Keshawn's death.

¶ 5    The two primary issues at trial were (1) whether the pursuing officer's conduct was willful and wanton, such that the City could be liable for injuries resulting from that conduct, despite the defense of governmental immunity, and (2) whether that conduct proximately caused Keshawn's death. The jury heard from lay and expert witnesses, was instructed on both issues, and, at the close of its first day of deliberations, sent a question to the judge regarding the definition of willful and wanton. After some debate, the court agreed to give the jury Ms. Carr's proposed answer to that question. The jury continued to deliberate, returning a verdict for the City on April 21, 2023.

¶ 6    The trial court entered judgment on the jury's verdict that same day, and, following an extension of time, Ms. Carr moved for a new trial on June 16, 2023. Ms. Carr argued that several of the trial court's evidentiary rulings constituted reversible error; that the pattern jury instruction on willful and wanton conduct was confusing; and that the court's answer to the jury's question regarding that instruction, though suggested by her own counsel, was insufficient to resolve that confusion. The trial court denied the motion. It rejected the evidentiary arguments; found no instructional error; and concluded that, even if there had been an error, the verdict would stand under the general verdict rule, as it was impossible to tell whether the jury found that Ms. Carr had

failed to prove that the pursuing officer's conduct was willful and wanton or that that conduct was the proximate cause of Keshawn's death.

¶ 7    Ms. Carr now appeals.

¶ 8                                  II. JURISDICTION

¶ 9    Illinois Supreme Court Rule 303 requires an appellant to file a notice of appeal with the clerk of the circuit court "within 30 days after the entry of the final judgment appealed from," or, if a timely posttrial motion is filed, "within 30 days after the entry of the order disposing of the last pending postjudgment motion directed against that judgment or order." Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). "The timely filing of a notice of appeal is both jurisdictional and mandatory." *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009). When an appeal is untimely under a supreme court rule, this court has "no discretion to take any action other than dismissing the appeal." *People v. Lyles*, 217 Ill. 2d 210, 217 (2005). It is the appellant's burden to establish a reviewing court's jurisdiction. *Shared Imaging, LLC v. Hamer*, 2017 IL App (1st) 152817, ¶ 19.

¶ 10    Citing these principles, the City moved to dismiss Ms. Carr's appeal as untimely on October 7, 2024. We elected to take that motion with the case, "without prejudice to [Ms. Carr] seeking a supervisory order from the Illinois Supreme Court to allow [a] late notice of appeal." Ms. Carr sought such an order, our supreme court denied her request, and the City renewed its motion. We again rejected the City's request to decide the motion at that time, deferring resolution of this issue until the case had been fully briefed and assigned to a panel.

¶ 11    While the question of this court's jurisdiction is hotly contested, the parties agree on several important points. They agree that the trial court denied Ms. Carr's motion for a new trial in a written order on July 12, 2024, and that Ms. Carr filed her notice of appeal 32 days later, on August

14, 2024. What they disagree over is when the signed order was "entered," thus triggering the 30-day jurisdictional period for filing a notice of appeal under Rule 303.

¶ 12    Rule 272 addresses when a final judgment is "entered" for purposes of Rule 303. Ill. S. Ct. R. 272 (eff. Jan. 1, 2018). Where a written judgment order has been signed by the judge, which is what occurred in this case, the rule states that "the clerk shall make a notation to that effect and the judgment becomes final only when the signed judgment is filed."

¶ 13    The City argues the judgment order here was "filed" on July 12, 2024, when the signed but undated and unstamped order was made available on the circuit court's electronic docket, and that Ms. Carr's notice of appeal filed more than 30 days later was therefore untimely. Ms. Carr maintains that the order was not "filed" until August 14, 2024, when it was stamped with an effective date of July 12, 2024. This would make her notice of appeal, filed that same day, timely. The parties have each attached documents to their memoranda supporting and opposing the motion to dismiss that they rely on in support of these opposing contentions.

¶ 14    Ms. Carr's lawyer, Jeffrey Neslund, states in his affidavit, attached to the response to the motion to dismiss, that based on the parties' correspondence with the trial judge, he believed the court would schedule a date for its ruling on Ms. Carr's motion for a new trial sometime between July 22 and 26, 2024. E-mails attached to Mr. Neslund's affidavit indicate that on July 8, 2024, he wrote to the court to "suggest the afternoon of July 24, 25 or 26 for the Court's ruling on Plaintiff's motion for a new trial." Two days later, on July 10, 2024, the court responded by saying, "The order is being reviewed and finalized. Hopefully it will be entered on Friday, July 12, 2024."

¶ 15    According to his affidavit, Mr. Neslund did not inquire further about the status of the order until July 25, 2024. The court's response, sent the same day, reads, "Counsel, M[y] understanding was that the order on Plaintiff's post trial motion was entered on [J]uly 12. Let me know

immediately if the order is not available on Odyssey." The parties agree that the order, when downloaded at that point from Odyssey e-file system, was signed by the judge but was undated and bore no stamp, either from the judge's chambers or from the clerk's office.

¶ 16 Ms. Carr also submitted an affidavit from Aurelio Aguilar, a paralegal at Mr. Neslund's law firm. Mr. Aguilar states that he downloaded the trial court's order on July 25, 2024. Two-and-a-half weeks later, on August 13, 2024, he attempted to file Ms. Carr's notice of appeal via the Odyssey e-file system. He received a notice the following day, August 14, 2024, that the clerk's office had rejected the filing. It stated: "Please double check the date you are appealing. Please attach the order you are appealing."

¶ 17 That day, Mr. Aguilar went in person to the clerk's office and explained that the order Ms. Carr was appealing "was not entered or dated." He was instructed to re-submit the notice of appeal and was told that the clerk's office would "address the 'error' in the court order." Mr. Aguilar resubmitted the notice of appeal, and it was accepted that same day—August 14, 2024.

¶ 18 When the City filed its motion to dismiss on October 7, 2024, Mr. Aguilar again went in person to the clerk's office. He states in his affidavit that he was informed that the order Ms. Carr was appealing was "entered and updated on August 14, 2024, by clerk, Karen Rayfield."

¶ 19 Attached to Mr. Aguilar's affidavit are (1) a copy of the trial court's signed but undated and unstamped order denying the posttrial motion, (2) the rejection message sent by the clerk's office on August 13, 2024, (3) a confirmation that the notice of appeal filed on August 14, 2024, was accepted, and (4) a screenshot, presumably of the clerk's case management system, showing that the entry for the order was "[u]pdated" on "8/14/2024" by "Rayfield, Karen." Below that is a line of text that, though not perfectly legible, appears to indicate that the docket entry for the order was first "[c]reated" by another individual on what appears to be some other date. The effective

date given to the order in the clerk's system is, per the screenshot, July 12, 2024.

¶ 20    In support of its motion to dismiss, the City submitted the affidavit of Stephen Glockner, one of its attorneys. In anticipation of the trial court's ruling on Ms. Carr's motion for a new trial, Mr. Glockner checked the electronic docket sheet on July 12, 2024. A docket entry dated that same day stated that the motion had been denied, and he downloaded the signed order and emailed it to his supervisor. From their respective affidavits, it appears that neither party received notice, by e-mail or otherwise, that the July 12, 2024, order had been posted to the electronic docket.

¶ 21    Documents submitted by the City show that on August 13, 2024, Mr. Aguilar served the City by email with the notice of appeal he had tried to file that day. Mr. Aguilar said in his e-mail that the notice of appeal had been submitted to the court for filing and he would "circulate filed-stamped [*sic*] copies upon receipt of the same." That initial notice of appeal, submitted August 13, 2024, gave the date of the order appealed from as three days in the future—August 17, 2024.

¶ 22    The City received a second email from Mr. Aguilar the following day, August 14, 2024, stating: "Pursuant to the clerk of the circuit court's clerical error, please see the attached filed [*sic*] stamped copy of Notice of Appeal that was resubmitted and filed on the record." Attached to this email was a second notice of appeal, file-stamped August 14, 2024, that gave the date of the order being appealed as July 12, 2024.

¶ 23    The copy of the order denying Ms. Carr's posttrial motion that appears in the record on appeal is stamped with a date of July 12, 2024. That stamp bears the name of the trial judge who issued the order but nothing indicates the order was ever entered or stamped by the clerk's office.

¶ 24    As noted above, the City argues that the trial court's judgment became final and appealable on July 12, 2024, when the signed but undated and unstamped order denying Ms. Carr's posttrial motion was posted to the circuit court's electronic docket. If that is correct, then Ms. Carr had until

Monday, August 12, 2024 (August 11, 2024, being a Sunday), to initiate this appeal; her notice of appeal, file-stamped August 14, 2024, was untimely; and her initial notice of appeal, filed on August 13, 2024, was also untimely.

¶ 25    Ms. Carr insists that her August 14, 2024, notice of appeal was timely because the trial court's order, though signed by the judge on July 12, 2024, was not formally filed or entered by the  clerk's office until a stamp was affixed to it on August 14, 2024, the same day as her refiled notice of appeal. While the copy of the order in the record on appeal has a stamped date of July 12, 2024, Ms. Carr asserts, and the City does not dispute, that this date was not put on that order until August 14, 2024, when Mr. Aguilar went to the clerk's office to inquire.

¶ 26    Ms. Carr's position is that a written judgment order is not "filed" unless it has been stamped by the clerk's office. However, our supreme court has made it clear that the presence of a file stamp is merely evidence—often the best evidence, but certainly not the only evidence—that a document has been filed by the clerk. In *Granite City Lodge No. 272, Loyal Order of Moose v. City of Granite City*, 141 Ill. 2d 122, 127 (1990), for example, our supreme court concluded that a signed order denying the defendant's post-trial motion was "entered" *both* because it bore a stamp showing that it was filed on a particular date *and* because an entry on the trial court docket sheet showed the same. And although we noted in *People v. Durley*, 203 Ill. App. 3d 731, 736 (1990), that "the commonly accepted manner of determining a filing date [was] by the circuit clerk's file stamp," we looked for a file stamp *or* a notation of judgment in the record before concluding that a signed order had not been filed in that case.

¶ 27    The order here, though signed by the trial judge on July 12, 2024, lacked a date or file stamp. However, a copy of the signed order was clearly posted to the court's electronic docket on July 12, 2024. The parties had access to the signed order on that date through the Odyssey eFileIL

portal (see https://efile.illinoiscourts.gov/about-e-file-page/ (last accessed Dec. 4, 2025) (noting that "eFileIL delivers electronic filing via [a] secure web portal for attorneys, self-represented litigants, and government agencies"), and it was therefore filed. Indeed, the City accessed the order from Odyssey on July 12, 2024. That the clerk's office did not affix a file-stamp to the order before it was made available electronically is a ministerial error that, in our view, affects neither the order's validity nor the time in which to appeal it.

¶ 28 Ms. Carr argues that the trial judge must have improperly "bypass[ed]" the clerk's office by posting the order directly to the Odyssey electronic filing system on July 12, 2024, and that the clerk's office had no involvement with the order until August 14, 2024. The documents that Ms. Carr has provided to this court certainly do not show that this is what occurred. Indeed, the affidavit from Mr. Aguilar attaches a screenshot, presumably of the clerk's case management system, showing that the entry for the order was "[u]pdated" on "8/14/2024" by "Rayfield, Karen," and that the docket entry for the order was first "[c]reated" by another individual on what appears to be an earlier date. Moreover, Mr. Carr points to nothing in the supreme court rules that requires the filing of an order to be done by the clerk's office, rather than the court.

¶ 29 Ms. Carr also argues that the clerk's office rejected her initial notice of appeal on August 13, 2024, because "there was no valid order to appeal in the Clerk's system." The notice of appeal was rejected with a notation from the clerk's office stating: "Please double check the date you are appealing." The date that the initial August 13, 2024, notice of appeal gave for the order being appealed was August 17, 2024—three days in the future. That certainly appears to be the reason that the initial notice of appeal was rejected.

¶ 30 Our supreme court made clear in *Granite City* that "actual notice to the parties is not required" for the time during which an appeal must be filed to commence, "so long as the order

appealed from was expressed publicly, in words, and at the situs of the proceeding." *Keener v. City of Herrin*, 235 Ill. 2d 338, 343 (2009) (citing *Granite City,* 141 Ill. 2d at 127). The court applied that rule in *Mitchell v. Fiat-Allis, Inc.*, 158 Ill. 2d 143, 148 (1994), where the appellant was not notified of the circuit court's judgment order, by either the court or the clerk's office, and did not learn of the order until after the 30-day period within which to appeal had expired. Our supreme court held that this fact was simply "not material under the *Granite City* analysis," as "Rule 303 requires attorneys to monitor their cases to [e]nsure that appeals are timely filed." *Id.* at 148, 150.

¶ 31    In this case, in contrast to *Mitchell,* all parties had actual notice of the signed judgment order in ample time to file a notice of appeal. Ms. Carr was aware that the trial court planned to issue its order on July 12, 2024, and the court's signed order was posted to the court's electronic docket on that date. Mr. Aguilar, the paralegal for Ms. Carr's attorney, acknowledged that he downloaded that order on July 25, 2024, over two weeks before the notice of appeal was due.

¶ 32    While our supreme court could provide that the 30-day jurisdictional period for filing a notice of appeal does not begin until there is actual notice to the parties or an order is filed that contains a date and/or the clerk's stamp, none of this is presently required by our supreme court rules. Rather, under Rule 272, the 30 days begins to run when the order is "filed." We find that the posting of the signed order denying the posttrial motion to the electronic docket on July 12, 2024, was—in itself and even in the absence of a date or a file stamp—a filing triggering the time for appeal set out in Rule 303. Ms. Carr's notice of appeal was therefore untimely.

¶ 33                                III. CONCLUSION

¶ 34    The City's motion, taken with the case, to dismiss this appeal for lack of appellate jurisdiction is granted.

¶ 35    Dismissed.

9

***Carr v. City of Chicago***, **2025 IL App (1st) 241639**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-L-002186; the Hon. Bridget A. Mitchell, Judge presiding. |
| **Attorneys for Appellant:** | Jeffrey Neslund, of the Law Offices of Jeffrey Neslund, of Chicago, and Robert Robertson, of Robertson Duric, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Mary B. Richardson-Lowry, Corporation Counsel of the City of Chicago, and Daniel E. Alperstein, Assistant Corporation Counsel, for appellee. |